## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| DANNY FRENCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.   10-cv-1214 |
| ) | |
| VILLAGE OF WALNUT, ILLINOIS; ) | |
| THOMAS PTASNIK, *Village of Walnut* ) | |
| *Police Chief*; CHAD HALL, *Village of* ) | |
| *Walnut Police Officer*; SCOTT CARLSON,) | |
| *Village of Walnut Police Officer*; ) | |
| BUREAU COUNTY SHERIFF'S ) | |
| DEPARTMENT; DAWN DOVE, *Bureau* ) | |
| *County Deputy*, ) | |
| ) | |
| Defendants. ) | |

## O R D E R   &   O P I N I O N

This matter is before the Court on Motions for Summary Judgment by both sets of Defendants: Defendants Carlson, Hall, Ptasnik, and the Village of Walnut Illinois (collectively, "Walnut Defendants") (Doc. 36); and Defendants Dove and the Bureau County Sheriff's Department (collectively "Bureau County Defendants") (Doc. 34). Plaintiff, who is proceeding *pro se*, was notified of both of these Motions by the Court, and of the requirement that he respond to them or risk their being granted in Defendants' favor, and has not responded; the deadlines for his Responses were May 4 and 7, 2012. (Docs. 35 & 37). For the reasons stated below, both Motions are granted.

## LEGAL STANDARD

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Typically, all inferences drawn from the facts must be construed in favor of the non-movant, but the court is not required to draw every conceivable inference from the record. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). However, where the non-moving party has failed to respond to the Motion for Summary Judgment, "we depart from our usual posture of construing all facts in favor of the non-moving party; rather, we accept as true all material facts contained in" the moving party's statement of undisputed material facts. *Johnson v. Gudmundsson*, 35 F.3d 1104, 1108 (7th Cir. 1994) (*citing Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 333 (7th Cir. 1993); *Martin v. Consultants and Administrators, Inc.*, 966 F.2d 1078, 1084 (7th Cir. 1992)). "Even if the opposing party completely fails to respond to a summary judgment motion,…the court still must ascertain that judgment is proper 'as a matter of governing law.'" *Id*. at 1112.

## RELEVANT FACTUAL BACKGROUND[1]

On July 5, 2009, Plaintiff arrived with a group, including Eliseo Bugarin, to the Village of Walnut's ("Walnut") Fourth of July fireworks display in its municipal park; they arrived early in order to reserve a spot. They became involved in a

---

[1] As the two sets of Defendants have submitted separate Motions for Summary Judgments, there are two sets of Undisputed Material Facts. As they do not conflict with one another and are supported by citations to competent evidence, they are set forth in this section as a coherent narrative. As discussed above, Plaintiff failed to respond to either Motion for Summary Judgment, so the Court takes the properly-supported facts as true.

dispute with Steven and Katie Koser, and Mr. Bugarin was arrested by Defendant Ptasnik after the Kosers informed Defendant Ptasnik that Mr. Bugarin was the source of the dispute.[2] While the officers were arresting Mr. Bugarin, Plaintiff ran toward Defendant Ptasnik, yelling that he was "gonna pay for this" and threatening to sue him. A large crowd was forming around the scene, and Defendant Ptasnik and the other officer decided to leave the park with Mr. Bugarin. There were thousands of people in the park at this time for the fireworks display.

On the way to the police station with Mr. Bugarin and the other officer, Defendant Ptasnik had informed the Bureau County Sheriff's Department of the incident in the park, and was told that no deputies were available to assist. Once he arrived at the station, Defendant Ptasnik received calls indicating that the disturbance at the park was ongoing. Because there were no other on-duty officers able to respond to the ongoing disturbance at the park, Defendant Ptasnik called in Defendant Hall to assist with restoring order in the park while he was at the police station with Mr. Bugarin. Defendant Ptasnik gave Defendant Hall a brief description of the events when Defendant Hall arrived at the police station. Defendant Ptasnik ordered Defendant Hall to go to the park, speak with Ms. Koser, and ask the offending parties to leave the park. Defendant Carlson accompanied Defendant Hall to the park, where they met with Ms. Koser, and asked her to identify who caused the disturbance; she identified Plaintiff, who was standing on a basketball court with two other men, including his brother-in-law, Richard Craig.

---

[2] Defendants include other details concerning Mr. Bugarin's arrest, but the Court finds that they are immaterial to Plaintiff's claims.

Mr. Craig yelled "Watch out!" to Plaintiff, who responded by turning quickly; his knees buckled after he turned.

Defendant Hall was familiar with Plaintiff, and addressed him as "Mr. French;" he told Plaintiff that there had been some complaints, and asked him to leave the park. Plaintiff immediately raised his voice and was verbally abusive to Defendants Hall and Carlson. Defendant Hall repeated his request, to which Plaintiff responded "No problem. Whatever." Plaintiff then left the park. Plaintiff was not arrested or threatened with arrest, and neither Defendant Hall nor Carlson made physical contact with him. They did not see him fall, limp, or otherwise display any sign or complaint of injury. Defendant Ptasnik was not present when Plaintiff was asked by Defendants Hall and Carlson to leave the park.

In order to be able to return to the park, Defendant Ptasnik asked the Bureau County Sheriff's Department to send a deputy to transport Mr. Bugarin to the county jail, which the Sheriff's Department agreed to do. Defendant Dove was the sheriff's deputy sent to transport Mr. Bugarin to the county jail. She traveled to the police station, but was not there at the same time as Defendants Hall and Carlson, and did not hear Defendant Ptasnik's discussion with Defendant Hall. She did not order or suggest that Plaintiff be removed from the park, and had no supervisory authority over any member of the Walnut Police Department. Defendant Dove was at the Walnut police station for ten to fifteen minutes, where she took custody of Mr. Bugarin from Defendant Ptasnik; she then transported him to the county jail. Defendant Dove treated Mr. Bugarin kindly. She was never in Plaintiff's presence that day. No Bureau County Sheriff's Department employee was

4

involved in Plaintiff's later removal from the park, and no Sheriff's Department employee suggested or ordered Plaintiff's removal from the park.

## DISCUSSION

Plaintiff's Complaint arises under 42 U.S.C. § 1983, which, in appropriate situations, provides for redress of constitutional violations. Plaintiff claims that all of the Defendants denied him "his rights, privileges and immunities guaranteed to him by the Constitution and laws of the United States of America." Construing Plaintiff's pro se Complaint liberally, he also may be making claims under the Fourth Amendment for the use of excessive force and false arrest, and under the Fifth and Fourteenth Amendments for denial of due process.

### I.  Walnut Defendants' Motion for Summary Judgment

The Walnut Defendants argue that Plaintiff cannot support claims for excessive force, false arrest, or denial of due process, and that the individual Defendants are entitled to qualified immunity. They also assert that Plaintiff's claim against the Village of Walnut is premised on a *respondeat superior* theory of liability, which is not cognizable under § 1983.

#### A.  Village of Walnut

Count I of Plaintiff's Complaint is directed toward the Village of Walnut, and alleges that the Village's liability results from the conduct of its police officers, who acted at the direction of the Chief of Police and were the Village's "employees, agents, officers and/or servants." (Doc. 1 at 1-2). Such *respondeat superior* liability is not actionable under § 1983. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978). Municipalities can only be held liable under § 1983 for injuries caused by an

5

express policy, a widespread custom, or the actions of a person with final policymaking authority. *McGreal v. Ostrov*, 368 F.3d 657, 684 (7th Cir. 2004) (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995); *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 734 (7th Cir. 1994)). Plaintiff does not identify any express policy or widespread custom of the Village that he claims caused him injury, and there is no support in the record before the Court to support such an allegation.

Plaintiff's Complaint does allude to the decisions of Defendant Ptasnik as Chief of Police, but the Village cannot be held liable for his actions because there is no indication that he has final policymaking authority for it. The ability to make executive decisions is not equivalent with "policymaking," as policymaking authority entails the ability to change the normative rules. *See Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir.1992) ("The Superintendent of Police in Chicago had no power to countermand the statutes regulating the operation of the department" and so was not a final policymaking authority under § 1983.). There is no showing here that Defendant Ptasnik (or any of the other Walnut Defendants) had the power to change the Village's rules regarding arrests for disorderly conduct.[3] Therefore, his actions and decisions could not impose liability on the Village.

---

[3]  In *Vodak v. City of Chicago*, the Seventh Circuit confronted a situation in which there was no express municipal policy constraining the police superintendent's decisions in a given situation, and held that his executive decisions, in that situation, were those of a "final policymaking authority" because he had "sole responsibility to make policy" on that issue. 639 F.3d 738, 748-49 (7th Cir. 2011). Here, there is no showing from Plaintiff that the Village did not have a policy on point, and so he cannot prevail on this question under *Vodak*. *See Marion v. Radtke*, 641 F.3d 874, 876–77 (7th Cir. 2011) ("[W]hen a plaintiff fails to produce

There is no genuine issue of material fact as to whether there is a Village policy or custom, or a decision by a person with final policymaking authority for the Village that caused Plaintiff's alleged injuries, and so summary judgment must be granted in the Village's favor.

**B.    Walnut Police Officers' Qualified Immunity**

Qualified immunity protects actions by government officers, unless their actions violate a clearly established constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Two inquiries are thus pertinent: "whether the facts that a plaintiff has…shown…make out a violation of a constitutional right," and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). Under *Pearson v. Callahan*, the Court may choose which inquiry to undertake first. *Id.* at 236. Because the Court can readily determine that Defendant Walnut Police Officers took no actions which can be said to have violated Plaintiff's constitutional rights, it will address the first question; given the following analysis, though, the Court can also say with confidence that Defendants would be entitled to qualified immunity under the second prong, as well, as no reasonable officers would have thought their actions to be unconstitutional under clearly established law.[4] As noted above, Plaintiff's Complaint is not specific as to what

---

evidence, the defendant is entitled to judgment; a defendant moving for summary judgment need not produce evidence of its own.").

[4]    Defendants have admirably put forth very thorough and detailed arguments against any and all conceivable claims by Plaintiff. While the Court appreciates this thoroughness, it is not in the interest of judicial economy, especially when Plaintiff has not responded, to discuss each possible rationale for a grant of summary

constitutional violations he alleges, but could be read as suggesting violations of the Fourth, Fifth, and Fourteenth Amendments.[5]

### 1. Fourth Amendment claims

Plaintiff's Complaint can be read as raising two Fourth Amendment claims: the use of excessive force, and wrongful arrest.

#### a. Excessive Force

Defendants assume from Plaintiff's allegation that he was "forcibly" removed from the park that he intends to raise an allegation that they used excessive force against him, in violation of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394 (1989) ("Where…the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons … against unreasonable … seizures' of the person." (last two ellipses in original)).

It is undisputed that the Defendant officers had no physical contact with Plaintiff, and there is no evidence that they at any time threatened to use any type of force against him, either verbally or by gesture.[6] Therefore, the only possible

---

judgment in Defendants' favor. The fact that the Court may discuss only one or two reasons for granting summary judgment does not necessarily mean that the other arguments proffered by Defendants are inapposite.

[5] Defendants also argue against a "privileges and immunities" clause claim, but the Court finds that Plaintiff's use of this phrase was intended to refer to the language in § 1983 referring to "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," and does not constitute a separate claim.

[6] Plaintiff alleges no specific injuries in his Complaint, but Defendants note that Plaintiff was apparently injured when he fell while reacting to Mr. Craig's

argument Plaintiff could make would be that police officers, simply by virtue of their position, make an implicit "threat" to use force any time they make a request of a citizen. However, no reasonable jury could find that this type of implicit "threat" could constitute the excessive use of force. If that were the case, no officer could ever make a request of an innocent person, because threatening to use force against an innocent person would certainly be unreasonable; a violation of the Fourth Amendment requires some sort of action beyond a simple, unadorned request. Therefore, the Walnut Police Officer-Defendants did not use excessive force against Plaintiff in violation of his Fourth Amendment rights, and are therefore entitled to summary judgment both on the merits and because they have qualified immunity.

### b.  Wrongful Arrest or Seizure

Defendants generously read a potential wrongful arrest claim into Plaintiff's Complaint, but argue that he was not arrested, and so there was no possible violation on this basis. Plaintiff's own testimony shows that he does not believe himself to have been arrested, or even threatened with arrest. The Complaint alleges no facts that suggest that Plaintiff was arrested or threatened with arrest, in the ordinary sense of that term, and the undisputed facts support the conclusion that there was no arrest or threatened arrest. The Court agrees that Plaintiff was not arrested.

---

saying "Watch out." There is no link alleged or proven between this action and Defendants. Even if Mr. Craig uttered these words because he saw the approaching officers, it would be ludicrous to suggest that the officers should be held liable because of Plaintiff's reaction to a third party's statement about their presence.

9

Defendants quickly move on to arguing that there is no basis upon which to find that Plaintiff was unconstitutionally "seized" by the officers when they asked him to leave the park. Only unreasonable seizures are unconstitutional. U.S. CONST. amend. IV ("The right of the people to be secure in their persons…against unreasonable…seizures, shall not be violated…"). Even assuming that Plaintiff was "seized,"[7] the undisputed facts show such seizure to have been reasonable. *See White v. City of Markham*, 310 F.3d 989, 995 (7th Cir. 2002) (citing *Wyoming v. Houghton*, 526 U.S. 295, 299–300 (1999)) (where "free to leave" inquiry is unclear because claimed seizure was an order for plaintiffs to leave a location, court can move to reasonableness analysis).

Whether a given seizure is reasonable is judged by examining the totality of the circumstances. The Court must "balanc[e] an individual's privacy interests against legitimate governmental interests." *Id.* (citing *Wyoming v. Houghton*, 526 U.S. 295, 299-300 (1999). The police certainly had a legitimate interest in maintaining peace at a crowded fireworks display at a public park. *See* 65 ILCS 5/11-1-2(a) ("Police officers in municipalities shall be conservators of the peace."). The Court finds that Defendants Ptasnik, Hall, and Carlson had adequate information on which to determine that Plaintiff was the root of the disturbance at the park, both through Defendant Ptasnik's experiences at the park, and through the Defendants' conversations with other witnesses. The Court also finds that no reasonable jury could find that Plaintiff's interest in remaining at the park

---

[7] Defendants do not concede this, but the Court finds that it is most efficient to determine the reasonableness of the seizure, rather than the more complicated and subjective question of whether a "seizure" took place.

10

outweighed the governmental interest in maintaining peace at the park, and so Defendants' request for Plaintiff to leave was reasonable. Summary judgment must be granted in Defendants Ptasnik's, Hall's, and Carlson's favor on this issue.

### 2. Fifth and Fourteenth Amendment claims

The Walnut Defendants also identify potential due process claims in Plaintiff's Complaint. Neither forms a basis for relief on the undisputed facts.

#### a. Substantive Due Process

"Substantive due process claims can address harmful, arbitrary acts by public officials, [b]ut such claims must meet a high standard." *Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46, 854 (1998); *Tun v. Whitticker*, 398 F.3d 899, 902–03 (7th Cir. 2005)). Defendants Ptasnik, Hall, and Carlson did not, as a matter of law, engage in activity that "shocks the conscience," as required to sustain a substantive due process claim, in asking Plaintiff to leave the park. *Tun*, 398 F.3d at 902 (citing *Rochin v. California*, 342 U.S. 165 (1952)).

#### b. Procedural Due Process

"A procedural due process claim involves a two-step inquiry: (1) whether the defendants deprived the plaintiffs of a constitutionally protected liberty or property interest; and (2) if so, whether that deprivation occurred without due process of law." *Doe v. Heck*, 327 F.3d 492, 526 (7th Cir. 2003) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 616 (7th Cir. 2002)). Plaintiff has identified no specific property interest in remaining at the park, and the Court finds that he had none; neither the state nor the Village appear

11

to limit their discretion to ask individuals to leave the park. *See, e.g., Booker-El v. Superintendent, Indiana State Prison*, 668 F.3d 896, 900 (7th Cir. 2012) (citations omitted) ("A legitimate claim of entitlement is 'defined by existing rules or understandings that stem from an independent source such as state law.' A protected property interest exists only when the state's discretion is 'clearly limited such that the plaintiff cannot be denied the interest unless specific conditions are met.').

Similarly, Plaintiff has identified no specific protected liberty interest, but, even assuming that there might be such a protected interest in remaining at the park,[8] the Court finds as a matter of law that the Defendants provided whatever minimal process was due for such a minor infringement on the interest. In order to determine whether Defendants provided "due process," the Court must consider three elements:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (citing *Goldberg v. Kelly*, 397 U.S. 254, 263-71 (1970)). Considering these factors, the Court finds that Plaintiff's interest in remaining at that particular park on that particular day was minimal,

---

[8]    *See City of Chicago v. Morales*, 527 U.S. 41, 54 (1999) (quoting *Kent v. Dulles*, 357 U.S. 116, 126 (1958); 1 W. Blackstone, COMMENTARIES ON THE LAWS OF ENGLAND 130 (1765)) ("[A]n individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is 'a part of our heritage,' or the right to move 'to whatsoever place one's own inclination may direct.'").

especially when balanced with the governmental interest in maintaining order at the crowded park. With these interests in mind, the Court finds that Defendants' decision to ask Plaintiff to leave the park on the basis of the information they had was adequate to address the risk of an erroneous deprivation; additional procedures would not have been feasible, nor would they have further protected against an erroneous deprivation. Therefore, no reasonable jury could find that Defendants Ptasnik, Hall, and Carlson violated Plaintiff's procedural due process rights, and summary judgment must be granted in their favor on this point.

## II.   Bureau County Defendants' Motion for Summary Judgment

The Bureau County Defendants argue that the Bureau County Sheriff's Department is not a suable entity under § 1983, that Defendant Dove did not engage in any conduct that deprived Plaintiff of his rights, and that Defendant Dove is entitled to qualified immunity.

### A.   Bureau County Sheriff's Department

Defendants raise the argument that the Bureau County Sheriff's Department is a political subdivision of the county, and is not an entity that has the capacity to be sued under § 1983. Under *Monell*, municipalities and units of local government are "persons" subject to suit under § 1983. 436 U.S. at 690-91. A local governmental unit's § 1983 liability turns on state law. *Sow v. Fortville Police Dept.*, 636 F.3d 293, 300 (7th Cir. 2011) (citing *McMillian v. Monroe County*, 520 U.S. 781, 786 (1997)). In Illinois, sheriffs are "independently elected officials not subject to the control of the county." *Ryan v. County of DuPage*, 45 F.3d 1090, 1092 (7th Cir. 1995).

Therefore, it appears that they are subject to suit.[9] *Franklin v. Zaruba*, 150 F.3d 682, 685-86 (7th Cir. 1998) (citing *Ryan*, 45 F.3d at 1092; *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989)).

However, the Sheriff's Department cannot be held liable, because Plaintiff has alleged no express policy, widespread custom, or action of a person with final policymaking authority to have caused his claimed injuries, which, as discussed above is required for a suit against a local governmental entity. *See McGreal*, 368 F.3d at 684 (citing *McTigue*, 60 F.3d at 382; *Baxter*, 26 F.3d at 734). Moreover, as discussed further below, he has alleged absolutely no connection between his alleged injuries and the actions of any County officials or employees. As Plaintiff has failed to allege or prove any facts suggesting that the Bureau County Sheriff's Department somehow violated any of his constitutional rights, or even took any actions affecting him, it is thus entitled to summary judgment in its favor.

### B. Defendant Dove's Qualified Immunity

As discussed above, Plaintiff can defeat the officers' qualified immunity only if he can show that Defendant Dove violated a clearly established constitutional right. *Pearson v. Callahan*, 555 U.S. at 232. The Court finds that it is in the interest of judicial economy to discuss whether Defendant Dove's actions constituted a violation of Plaintiff's rights, and concludes that they did not.

---

[9] The Bureau County Defendants' citations supporting their contention that the Sheriff's Department is not a suable entity are inapplicable. *Wagner v. Washington County* involved Wisconsin law, and, as noted above, the capacity of a state's subdivisions to be sued is a matter of state law; Wisconsin law is thus irrelevant. 493 F.3d 833, 835 (7th Cir. 2007). In *Chapman v. Village of Franklin Park*, the Northern District of Illinois relied only on Wagner and another case discussing Wisconsin law, and so its conclusion that Illinois sheriff's departments cannot be sued under § 1983 cannot be used.

"A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) (citing *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981)). Here, Plaintiff's Complaint alleges no actions by Defendant Dove that could possibly be seen as a violation of his constitutional rights. The undisputed facts show that Defendant Dove merely transported Mr. Bugarin to the Bureau County Jail. Defendant Dove was never at the park or otherwise in Plaintiff's presence on July 5, 2009. She did not speak with or even see Defendants Hall or Carlson, and did not order or influence their decision to ask Plaintiff to leave the park. Defendant Dove was only involved with Mr. Bugarin, whose arrest is not at issue and who is not a party to this suit. There is simply no connection between Defendant Dove and Plaintiff's alleged injuries.

As Plaintiff has failed to prove (or even allege) any facts suggesting that Defendant Dove took any action affecting his constitutional rights on July 5, 2009, he cannot show that she violated those rights. Therefore, she is entitled to summary judgment both on the merits and because she has qualified immunity.

## Conclusion

For the foregoing reasons, both Motions for Summary Judgment (Docs. 34 & 36) are GRANTED. CASE TERMINATED.

Entered this 14th day of June, 2012.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
